UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
WILLIAM R. UNDERWOOD,                :
                                     :
                      Plaintiff,     :        16cv9058 (DLC)
                                     :
          -v-                        :        OPINION AND ORDER
                                     :
LASTRADA ENTERTAINMENT COMPANY, LTD.,:
STEVE ARRINGTON, SAM CARTER, CHARLES :
CARTER, WAUNG HANKERSON, and ROGER   :
PARKER,                              :
                                     :
                      Defendants.    :
                                     :
------------------------------------ X

APPEARANCES

For plaintiff William R. Underwood:
Lita Teresa Rosario
Lita Rosario, PLLC
529 14th St NW, Suite 952
Washington, DC 20045

For defendants Lastrada Entertainment Company, Ltd., Sam Carter,
and Charles Carter:
Brian Seth Levenson
Schwartz & Ponterio, PLLC
134 West 29th Street
New York, NY 10128

DENISE COTE, District Judge:

     Defendants Lastrada Entertainment Company, Ltd.

("Lastrada"), Charles Carter and Sam Carter (collectively, the

"Defendants") move for judgment on the pleadings and to dismiss

the first amended complaint ("FAC") in this action.[1]  For the

---

[1] As described below, this action remains active against only the
three Defendants.

reasons that follow, the motion is largely granted.  Underwood's claim for conversion of a sum certain survives.

### Background

The following facts are taken from the FAC and documents integral to it or incorporated by reference.[2]  William Underwood is a former music promoter and the sole owner of Konglather Music ("Konglather").  Lastrada is a New York-based music publishing company.  Charles and Sam Carter are performing artists.

Underwood's claims arise from his assertion of rights in three sets of intellectual property.  Those sets are master vocal recordings performed by the two Carters among others (the "Konglather Masters"), musical arrangements listed in Schedule A to the FAC (the "Konglather Compositions"), and finally, three

---

[2] In his opposition, Underwood maintains that this motion should be converted into one for summary judgment.  As explained below, Underwood has offered evidence of a demand upon Lastrada that he argues saves his accounting claim.  Other evidence offered by the Defendants, if considered, may permit summary judgment to be granted in their favor on the surviving conversion claim.

Rule 12(d), Fed. R. Civ. P., provides:  "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. . . ."  Conversion to summary judgment is not required where matters outside the pleadings are excluded by the Court.  Cleveland v. Caplaw Enterprises, 448 F.3d 518, 521 (2d Cir. 2006).  Although the parties have included extrinsic evidence in their submissions, this Opinion considers only the pleadings and documents integral to the FAC or incorporated by reference. Accordingly, conversion is unnecessary.

musical compositions that sample two of the Konglather
Compositions (the "Three Works").

Three contracts entered into on November 30, 1982, are also
relevant to Underwood's claims.  The first is an agreement
between Konglather and the individual defendants, among others,
that principally concerns the Konglather Masters (the
"Konglather Artist Agreement").  Three provisions of that
contract have particular relevance to this litigation.  Section
7.01 granted Konglather ownership of the Konglather Masters:

> <u>Each Master Recording</u> made under this agreement, from
> the Inception of Recording, <u>will be considered a 'work
> made for hire'</u> for Company, and will be deemed
> transferred to Company by this agreement, together
> with all rights in it, if it is determined not to be
> such a work . . . . All such Master Recordings and all
> Matrices and Phonograph Records manufactured
> therefrom, together with the performances embodied
> thereon, <u>shall be sole property of Company</u>, free from
> any claims whatsoever by you or any other Person . . .
> .

(emphasis supplied.)  Section 9 set forth the base royalty rates
for albums and singles and defined various adjustments to those
rates.  The royalties were to be paid to the individual
performers, including the Carters.  Finally, Section 12.04
assigned Konglather ownership over unpublished musical
compositions controlled by the individual performers, including
the Carters.

Also on November 30, 1982, Underwood, Charles Carter, and Arrington entered into an agreement distributing shares of Konglather (the "Konglather Shareholders Agreement"):  35% to Underwood and Arrington; 30% to Charles Carter.  Section 14 of the Konglather Shareholders Agreement provided:

> This agreement will terminate on: (a) The written agreement of all parties to this agreement; (b) The acquisition of all shares in the Corporation by any of the parties hereto; and (c) The Corporation being subject to bankruptcy under Federal Law, or an assignment of all assets to a trustee for the benefit of creditors.

Underwood alleges that he is now the sole owner of Konglather since Arrington and Charles Carter relinquished their respective stakes in Konglather in a 1984 written agreement.  Underwood has not attached the 1984 document to the FAC.[3]

Finally, Konglather entered into an agreement with the Atlantic Recording Corporation ("Atlantic") to market and distribute the Konglather Masters (the "Atlantic Agreement"). The Atlantic Agreement provided that Konglather would receive a 12-16% royalty.

In 2001, Underwood filed an action against, among others, Charles and Sam Carter.  <u>William R. Underwood v. Peter Shukat, et al.</u>, 01-cv-0786 (the "Prior Action").  The Prior Action

---

[3] Although it would be integral the FAC if any party had provided a copy of the 1984 document to the Court, as of this date it is not part of the record of this action.

alleged that Charles Carter and Steve Arrington had licensed the Konglather Compositions and collected royalties from those licenses despite surrendering their shares in Konglather in 1984.

In 2003, the parties to the Prior Action entered into a settlement agreement (the "2003 Settlement Agreement").  The agreement refers to Underwood and Konglather Music, Inc. as the "Releasors," and Underwood as the "Releasor."  Furthermore, the 2003 Settlement Agreement defines "Claimant Releasors" as: "Releasor, his heirs, executors, administrators, successors, licensees, sub-publishers, assigns, co-venturers, partners, employees, agents, managers, business managers, accountants, attorneys, representatives and consultants."  The "Releasees" include, among others, Arrington, the Carters, Waung Hankerson and Jane Peterer.  Underwood alleges that Lastrada acquired its copyright interest in the Konglather Compositions from Jane Peterer.

Pursuant to the 2003 Settlement Agreement, Underwood was assigned 15% of the Releasees' "publisher's share" of the copyright interest in the Konglather Compositions.  The Agreement explains that the assignment "shall compromise all claims of ownership" of Underwood and Konglather in the Konglather Compositions against the Releasees.  It gave

Underwood "the exclusive right to administer and exploit" his interest in the Konglather Compositions.

Section 5 of the 2003 Settlement Agreement purported to void all prior agreements between the signatories.  It stated:

> This Agreement, together with the Exhibits annexed hereto and incorporated herein by reference, sets forth the entire agreement between the parties hereto, and no other agreements, representations, warranties, or covenants of any kind have been made by any party, except specifically set forth herein.  <u>All prior agreements between Claimant Releasors and the Released Parties are declared null and void.</u>

(emphasis supplied).  Finally, Section 9 sets forth Underwood's covenant not to sue "for all future claims by Releasor against Releasee of any kind or description whatsoever arising or accruing after the date hereof."  Underwood and both Carters signed the document, along with others.

In December 2017, Underwood learned that Arrington, Lastrada, and Charles Carter had represented to Rhino Entertainment Company ("Rhino"), a division of Atlantic, that they were still owners of Konglather and entitled to collect the royalties "for Konglather Records under the Atlantic Agreement." Based upon that "false" representation, they are alleged to have collected $149,441.28 in royalties for the Konglather Masters.

Underwood filed this action in November 2016, originally naming only Lastrada and Arrington.  In May 2017, Underwood dismissed the claims against Arrington with prejudice.  On

January 2, 2018, two weeks before the close of discovery,
Underwood moved to amend his complaint to join additional
parties and add new claims.  The Honorable Deborah Batts, to
whom this case was assigned, granted Underwood's request to add
the Carters and Hankerson and stayed discovery.[4]  Underwood filed
the FAC on May 9, 2018.

The FAC contains four claims.  Three of them concern the
Konglather Compositions.  The FAC brings a claim for an
accounting and for conversion as to the Konglather Compositions.
In these two claims it asserts that the Defendants have been
collecting Underwood's 15% share of earnings from the Konglather
Compositions, have converted that money, and owe him an
accounting.  The FAC also asserts a breach of fiduciary duty
claim arising from his purported ownership interest in the Three
Works, which he alleges contain samples from Konglather
Compositions.  He seeks a constructive trust for his pro rata
share of the asserted copyright interest in the Three Works and
a declaration that he is a "co-owner" of the Defendants'
interest in the Three Works.

The FAC asserts one claim in connection with the Konglather
Masters.  It asserts that the Defendants have converted

---

[4] Judge Batts denied Underwood's request to include Arrington as
a defendant since Underwood had dismissed the claims against
Arrington with prejudice.

$149,441.28 that Rhino owed him pursuant to the Atlantic Agreement for his interest in the Konglather Masters.

The Defendants moved for judgment on the pleadings and to dismiss the FAC in August 2018.[5]  On September 17, Underwood opposed the Defendants' motion and requested leave to file a Second Amended Complaint ("SAC") to include allegations that he had made demands for royalties from the Konglather Masters and Konglather Compositions.  On February 5, 2019, Judge Batts granted the Defendants' motion to dismiss and denied Underwood leave to amend his complaint for a second time.

On February 20, 2019, Underwood moved for reconsideration of the February 5 dismissal.[6]  On February 19, 2020, this action was reassigned to this Court.  At a conference on March 20, this Court granted Underwood's motion for reconsideration and restored the August 2018 motion to dismiss to the docket.

## Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to

---

[5] The claims against Hankerson were dismissed without prejudice on August 14, 2018, after Underwood failed to serve Hankerson. Advising Judge Batts that he had settled his dispute with Parker, Underwood dismissed the claims against Parker on March 5, 2019.

[6] Underwood also appealed the February 5, 2019 decision to the Second Circuit Court of Appeals.  That appeal is stayed pending the outcome of this motion.

relief that is plausible on its face." Geffner v. Coca-Cola Co., 928 F.3d 198, 199 (2d Cir. 2019) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Charles v. Orange County, 925 F.3d 73, 81 (2d Cir. 2019) (citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Empire Merchants, LLC v. Reliable Churchill LLP, 902 F.3d 132, 139 (2d Cir. 2018) (citation omitted).  The plaintiff must plead enough facts to "nudge[] [its] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

When a party moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P., a court must "constru[e] the complaint liberally, accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor." Coalition for Competitive Electricity, Dynergy Inc. v. Zibelman, 906 F.3d 41, 48-49 (2d Cir. 2018) (citation omitted).  "A complaint is . . . deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are

integral to the complaint." Sierra Club v. Con-Strux, LLC, 911 F.3d 85, 88 (2d Cir. 2018) (citation omitted).

In deciding a motion for judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ. P., courts "apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." Mantena v. Johnson, 809 F.3d 721, 727-28 (2d Cir. 2015) (citation omitted). "On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (citation omitted).

I. Accounting for Royalties from the Konglather Compositions

The Defendants move for dismissal of Underwood's claim for an accounting of royalties derived from the Konglather Compositions.[7]  The Second Circuit has recognized that co-owners of a copyrighted work "are to be treated generally as tenants in common, with each co-owner having an independent right to use or license the use of a work, subject to a duty of accounting to

---

[7] In oral argument on the motion for reconsideration, Underwood's counsel admitted that Underwood does receive royalties from a domestic performing rights organization, but seeks here performance royalties for nondomestic performances as well as synchronization royalties.

the other co-owners for any profits." <u>Davis v. Blige</u>, 505 F.3d
90, 98 (2d Cir. 2007) (citation omitted).  Under New York law,[8] a
plaintiff bringing a claim for an accounting must plead "(1)
relations of a mutual and confidential nature; (2) money or
property entrusted to the defendant imposing upon him a burden
of accounting; (3) that there is no adequate legal remedy; and
(4) in some cases, a demand for an accounting and a refusal."
<u>Butler v. Ross</u>, No. 16CV1282 (DLC), 2016 WL 3264134, at *2
(S.D.N.Y. June 14, 2016) (citation omitted).  "[A] court of
equity will not intervene to vindicate a partner's right to an
accounting in the absence of a showing that a demand for one was
made and rejected by the partner in possession of the books,
records, profits or other assets of the partnership." <u>Kaufman
v. Cohen</u>, 760 N.Y.S.2d 157, 168 (1st Dep't 2003).

Defendants' motion is granted.  Assuming that Underwood had
a right to an accounting from the Defendants, the FAC does not
allege that Underwood made the requisite demand for an

---

[8] The parties have not addressed the choice of law.  Their
memoranda, however, refer to New York law.  As a New York
federal court sitting in diversity jurisdiction, this Court
applies the choice of law rules of New York.  <u>Int'l Bus. Machs.
Corp. v. Liberty Mut. Ins. Co.</u>, 363 F.3d 137, 143 (2d Cir.
2004).  An agreement between the parties to apply New York law,
even where that agreement is implicit, is sufficient to
establish the appropriate choice of law.  <u>Krumme v. WestPoint
Stevens Inc.</u>, 238 F.3d 133, 138 (2d Cir. 2000); <u>see also</u> <u>Fed.
Ins. Co. v. Am. Home Assur. Co.</u>, 639 F.3d 557, 566 (2d Cir.
2011).  Accordingly, New York law applies.

accounting for the royalties from the Konglather Compositions.
That is fatal to his claim for an accounting.  In opposing this
motion, Underwood does not dispute this deficiency in the FAC.
Instead, Underwood asserts that he made a demand of Lastrada for
an accounting on July 17, 2015.[9]  Plaintiff cannot use his
opposition to this motion to cure factual deficiencies in the
FAC.

The Defendants point out that the claim for an accounting
should also be dismissed because the FAC does not contain any
factual basis for its claim that the Defendants ever received
royalty money belonging to Underwood for which an accounting may
be due.  The FAC relies instead on a conclusory assertion.  They
point as well to evidence that Underwood has received royalty
payments from a performing rights organization, and the three-
year statute of limitations for any accounting claim.  Given the
FAC's failure to plead that a pre-suit demand was made, this
claim for an accounting is dismissed without reaching these
additional arguments, which rely in part on evidence of matters
extrinsic to the FAC.

---

[9] As described below, in connection with Underwood's application
to amend his complaint for a second time, the demand letter that
Underwood submitted in opposition to this motion was a demand
made by Konglather, not Underwood.

II.  Conversion of Royalties from the Konglather Compositions

The Defendants move to dismiss the claim that they have converted royalties due to Underwood from the Konglather Compositions.  Under New York law,

> [a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession. Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights.

Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50 (2006).  See also Pappas v. Tzolis, 20 N.Y.3d 228, 234 (2012). When a plaintiff alleges that money was converted, "an action will lie . . . where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question."  Bascunan v. Elsaca, 874 F.3d 806, 820 n.56 (2d Cir. 2017).  See also Thys v. Fortis Sec. LLC, 74 A.D.3d 546, 549 (1st Dep't 2010); Republic of Haiti v. Duvalier, 211 A.D.2d 379, 384 (1st Dep't 1995).

> A cause of action alleging conversion should be dismissed when the plaintiff does not allege legal ownership or an immediate right of possession to specifically identifiable funds and that the defendant exercised an unauthorized dominion over such funds to the exclusion of the plaintiff's rights.

CSI Grp., LLP v. Harper, 61 N.Y.S.3d 592, 599 (2d Dep't 2017).

Defendants' motion to dismiss this conversion claim is granted.  The FAC describes the property at issue as "earnings from Plaintiff's ownership interest in the Konglather Compositions."  It does not identify either the amount converted or a discrete fund to which Underwood is entitled.  The identification of a royalty rate of 15% is insufficient to state a claim.

Additionally, the FAC does not adequately allege that the Defendants' possession of royalties interfered with Underwood's own rights.  Pursuant to the 2003 Settlement Agreement, Underwood was assigned "the exclusive right to administer and exploit his respective shares of the [Konglather] Compositions." The FAC does not assert that the Defendants prevented Underwood either from seeking from an issuer of royalties those amounts to which he may be entitled or from otherwise enforcing his right to receive them.

III.   Conversion of Royalties from the Konglather Masters

The Defendants also seek dismissal of the claim for conversion of royalties due from the Konglather Masters.  The Defendants' motion to dismiss this conversion claim is denied. Here, the FAC does allege a specific amount to which Underwood asserts he had a right of immediate possession: the $149,441.28 in royalties for the Konglather Masters received pursuant to the

14

Atlantic Agreement.  Whether this sum is a specific,
identifiable fund that can support a claim for conversion cannot
be resolved on this motion to dismiss.

The Defendants argue that documentary evidence shows that
Underwood has been directly collecting the royalties he is owed.
While this may permit the Defendants to prevail on a motion for
summary judgment, that evidence is not properly considered on
this motion.

Next, the Defendants argue that this claim must be
dismissed because Underwood did not demand a return of the
converted royalties.[10]  A prior demand for the return of the
property is only required when the original possession was
lawful.  Leveraged Leasing Admin. Corp. v. PacifiCorp Capital,
Inc., 87 F.3d 44, 49-50 (2d Cir. 1996).  Underwood alleges that
the Defendants interfered with his initial right of possession,
and therefore their possession of this sum was unlawful.  In
these circumstances, the law does not require a prior demand.

Finally, the Defendants argue that Underwood's claim for
conversion is barred because he never "possessed" the royalties
from the Konglather Masters.  But, as the very legal authorities

---

[10] The Defendants also point out, correctly, that there is a
three-year statute of limitations on a claim of conversion.
N.Y. C.P.L.R. § 214(3).  How that limitations period may affect
Underwood's success on this claim cannot be resolved on this
motion.

on which the Defendants rely explain, an action for conversion
may lie where a plaintiff had an ownership interest in the
specific sum which the plaintiff asserts was converted.  See
Peters Griffin Woodward, Inc. v. WCSC, Inc., 88 A.D.2d 883, 884
(1st Dep't 1982).  See also CSI Grp., LLP, 153 A.D.3d at 1320
(stating that a plaintiff must allege "legal ownership or an
immediate right of possession to specifically identifiable
funds").

IV.  Breach of Fiduciary Duty and Constructive Trust

The Defendants have moved to dismiss Underwood's breach of
fiduciary duty claim and claim for a constructive trust related
to royalties generated by the Three Works.  Underwood asserts
the Three Works contain samples from the Konglather Compositions
and that that sampling entitles him to share in royalties
generated by the Three Works.

Under New York law, the elements of a claim for breach of
fiduciary duty are "(i) the existence of a fiduciary duty; (ii)
a knowing breach of that duty, and (iii) damages resulting
therefrom."  Spinelli v. Nat'l Football League, 903 F.3d 185,
207 (2d Cir. 2018) (citation omitted).  To obtain a constructive
trust under New York Law, a plaintiff must demonstrate four
elements:  "(1) a fiduciary or confidential relationship between
the parties, (2) a promise, (3) a transfer of an asset in

16

reliance upon the promise, and (4) unjust enrichment flowing from a breach of the promise." Cty. of Nassau v. Expedia, Inc., 992 N.Y.S.2d 293, 296 (2d Dep't 2014).

"A fiduciary relationship exists under New York law when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." Spinelli, 903 F.3d at 207. (citation omitted). "It exists only when a person reposes a high level of confidence and reliance in another, who thereby exercises control and dominance over him." People v. Coventry First LLC, 13 N.Y.3d 108, 115 (2009). "No fiduciary duty is owed where explicit contractual disclaimers of fiduciary duty apply." Spinelli, 903 F.3d at 207 (citation omitted).

Underwood's claim for breach of fiduciary duty and constructive trust is dismissed because he has not alleged that the parties were in a fiduciary relationship. Indeed, the 2003 Settlement Agreement expressly disclaims such a relationship between Underwood and the individual defendants.

In opposing this motion, Underwood admits the Defendants are not his fiduciaries. He argues that one of the three Defendants, Lastrada, acted as Underwood's agent in entering into agreements for the sampling of the Konglather Compositions. This argument fails. The FAC does not plead an agency

relationship with Lastrada.  As noted above, the 2003 Settlement
Agreement gave Underwood the responsibility for enforcing his
right to royalties from the Konglather Compositions; it did not
make Lastrada his agent for that or any other purpose.

V.   Declaration of Ownership Interest in the Three Works

The Defendants move for dismissal of Underwood's request
that he be declared a co-owner of the Three Works.  Although the
factual predicate for this request in the FAC is not developed,
the FAC apparently seeks a declaratory judgment that Underwood
is part owner of the Three Works by virtue of his 15% ownership
of the Konglather Compositions.

There are three statutorily enumerated methods of obtaining
copyright ownership: authorship, a transfer in a signed writing,
or by termination of a prior assignment after 35 years and the
fulfillment of certain statutory prerequisites.  17 U.S.C. §§
201(a), 203, 204(a).  Certain copyright protections also extend
to derivative works.  A derivative work is one that is
"substantially copied from a prior work."  Melville B. Nimmer &
David Nimmer, 1 Nimmer on Copyright § 3.01; see Castle Rock
Entm't, Inc. v. Carol Pub. Grp., Inc., 150 F.3d 132, 143 n.9 (2d
Cir. 1998).  Co-ownership of an underlying work, however, does
not convey ownership in a derivative work.  Weissmann v.
Freeman, 868 F.2d 1313, 1318 (2d Cir. 1989) (A "co-author [of an

18

underlying work] acquires no property rights in the newly created work prepared without his involvement.").

Underwood's alleged co-ownership of the Konglather Compositions is insufficient to plead a property interest in the Three Works, even assuming for purposes of this analysis that the Three Works contain samples taken from the Konglather Compositions.  Underwood does not offer a meaningful response to this statement of the law.  This request for declaratory relief is therefore dismissed.

## VI.  Leave to File a Second Amended Complaint

In opposing this motion, Underwood seeks leave to file a Second Amended Complaint ("SAC").[11]  He proposes adding the factual allegation that he did, in fact, make a demand of Lastrada for royalties from the Konglather Compositions on July 17, 2015.

"A district court has broad discretion in determining whether to grant leave to amend."  United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 28 (2d Cir. 2016) (citation omitted).  Although leave to amend under Rule 15 "shall be

---

[11] Underwood also seeks leave to file a sur-reply to the Defendants' motion to dismiss and for judgment on the pleadings. The Defendants' reply raises no new arguments and Underwood's proposed sur-reply simply recites the arguments he raised in his opposition.  Therefore, Underwood's request for leave to file a sur-reply is denied.

freely given as justice so requires," Fed. R. Civ. P. 15(a)(2),
it is well established that "[l]eave to amend may be denied for
good reason, including futility, bad faith, undue delay, or
undue prejudice to the opposing party." Kim v. Kimm, 884 F.3d
98, 105 (2d Cir. 2018) (citation omitted).[12]  "A proposed
amendment to a complaint is futile when it could not withstand a
motion to dismiss." Balintulo v. Ford Motor Co., 796 F.3d 160,
164-65 (2d Cir. 2015) (citation omitted).  Prejudice occurs
where amendment would "(i) require the opponent to expend
significant additional resources to conduct discovery and
prepare for trial; (ii) significantly delay the resolution of
the dispute; or (iii) prevent the plaintiff from bringing a
timely action in another jurisdiction." Pasternack v. Shrader,
863 F.3d 162, 174 (2d Cir. 2017) (citation omitted).  Mere delay
absent a showing of bad faith or undue prejudice is insufficient
to deny the right to amend.  Id.

    Underwood's request for leave to amend is again denied.
Judge Batts denied this request on February 5, 2019.  Judge

---

[12] It is assumed for purposes of this analysis that Rule 15
provides the appropriate standard of review for this application
even though Underwood has made no motion for leave to amend.
Because the request to amend is properly denied under Rule 15,
it is unnecessary to decide whether the more demanding good
cause standard provided by Rule 16 is the appropriate standard.

Batts noted that Underwood's proposed amendment would not cure the deficiencies in the FAC.

Underwood did not submit a proposed SAC with his request for leave to amend set forth in his opposition; nor has he made a properly supported motion for leave to file an amended pleading.[13]  Second, Underwood offers no explanation for failing to include a description of the demand in either of his prior complaints.  This unexplained delay weighs heavily against Underwood's belated request for leave to amend.  Finally, Judge Batts was correct in concluding that any amendment would be futile.  The letter on which Underwood relies as constituting his "demand" was not addressed to two of the three defendants; it was not addressed to the Carters.  Moreover, it was not a demand made by Underwood; it was a demand made by Konglather.

### Conclusion

The Defendants' August 17, 2018 motion is largely granted. With the exception of the claim for conversion of $149,441.28 in connection with the Konglather Masters, the claims against the

---

[13] Underwood's proposed SAC, submitted with his unauthorized sur-reply, also fails to plead that he demanded and was refused an accounting.

Defendants are dismissed.


Dated:     New York, New York
           July 6, 2020


                              _____
                                        DENISE COTE
                              United States District Judge