```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
WILLIAM R. UNDERWOOD,                  :
                                       :
                       Plaintiff,      :      16cv9058 (DLC)
                                       :
            -v-                        :      OPINION AND ORDER
                                       :
LASTRADA ENTERTAINMENT COMPANY, LTD.,  :
STEVE ARRINGTON, SAM CARTER, CHARLES   :
CARTER, WAUNG HANKERSON, and ROGER     :
PARKER,                                :
                                       :
                       Defendants.     :
                                       :
-------------------------------------- X
```

APPEARANCES:

For plaintiff William R. Underwood:
Lita Teresa Rosario
Lita Rosario, PLLC
529 14th St NW
Suite 952
Washington, DC 20045

For defendants Lastrada Entertainment Company, Ltd., Sam Carter,
and Charles Carter:
Brian Seth Levenson
Schwartz & Ponterio, PLLC
134 West 29th Street
New York, NY 10128

DENISE COTE, District Judge:

The parties in this long-running dispute over music
royalties have cross-moved for summary judgment on the sole
remaining claim in this action, a claim alleging that the
defendants converted a portion of the royalties attributable to
certain master recordings (the "Master Royalties").  Because any

such conversion claim belongs to the dissolved corporation that owned the rights to the Master Royalties, and not the plaintiff, the plaintiff lacks standing to pursue it.  The defendants' motion for summary judgment is therefore granted.

## Background

The following facts are derived from the parties' submissions in conjunction with their cross-motions for summary judgment, as well as this Court's prior Opinion (the "July 2020 Opinion") addressing the defendants' motion for judgment on the pleadings and to dismiss.  Underwood v. Lastrada Ent. Co., Ltd., No. 16cv9058 (DLC), 2020 WL 3640532 (S.D.N.Y. July 6, 2020). Familiarity with the July 2020 Opinion is presumed.  The underlying facts and procedural history of this dispute are addressed in detail in the July 2020 Opinion and are only recapitulated here as necessary.

In brief, plaintiff William Underwood is a former music promoter who, in 1982, co-founded a company called Konglather Music Inc. ("Konglather"), which he incorporated with the New York Department of State.  Defendants Charles and Sam Carter are musicians.

On November 30 of that year, Konglather entered into a Shareholders Agreement with Underwood, defendant Charles Carter,

and Steven Arrington.[1]  Pursuant to the Shareholders Agreement, Underwood and Arrington each owned 35% of Konglather, while Charles Carter owned 30% of Konglather.  Each shareholder was entitled to a percentage of Konglather's net receipts equal to their ownership stake.  Underwood was also named Konglather's president.

Also on November 30, 1982, Arrington, Charles Carter, Sam Carter, and several other musicians jointly entered into a recording contract with Konglather.[2]  Under the terms of that recording contract, the musicians were obligated to record an album (the "Konglather Masters"), and Konglather was granted ownership of the Konglather Masters.  The recording contract also provided that Konglather would keep half of the Master Royalties, while the remaining half would be distributed to the musicians in accordance with the terms of the contract.

Finally, Konglather entered into an agreement with Atlantic Recording Corporation (the "Atlantic Agreement"), in which Atlantic would sell and license recordings derived from the Konglather Masters and pay the royalties to Konglather.  Under this series of agreements (collectively, the "1982 Agreements"),

---

[1] Arrington was initially named as a defendant in this action but was voluntarily dismissed pursuant to a joint stipulation of the parties in 2017.

[2] Underwood is not a party to this recording contract.

then, Atlantic was obligated to pay Konglather the Master
Royalties; Konglather was required to use half of the Master
Royalties to pay each musician their contractually defined share
of the Master Royalties; and then the remaining half was to be
divided among Konglather's owners in proportion to their
respective ownership shares.

Underwood asserts that Arrington and Charles Carter
relinquished their respective ownership shares in Konglather in
1984, and ownership of their shares was transferred to
Konglather.[3]  In 1990, Underwood was convicted of crimes related
to narcotics trafficking and sentenced to life imprisonment.[4]
United States v. Underwood, 932 F.2d 1049, 1051 (2d Cir. 1991).
In the wake of Underwood's conviction and sentence, Konglather
was involuntarily dissolved for failure to pay state taxes,

---

[3] Although Underwood claims that Arrington and Charles Carter
relinquished their shares in Konglather via written agreement,
he has been unable to produce this agreement, and an inventory
of Konglather documents produced in 1994 does not reference this
agreement.  Because a court must "draw[] all inferences in favor
of the non-moving party" in evaluating a motion for summary
judgment, Windward Bora, LLC v. Wilmington Sav. Fund Soc'y, FSB,
982 F.3d 139, 142 (2d Cir. 2020), it is assumed for the purposes
of this Opinion that Arrington and Charles Carter in fact
relinquished their shares in Konglather in 1984.

[4] Earlier this year, Underwood's sentence was reduced to time
served pursuant to 18 U.S.C. § 3582(c)(1)(A).  United States v.
Underwood, No. 88cr822 (SHS), 2021 WL 3204834 (S.D.N.Y. Jan. 15,
2021).

pursuant to N.Y. Tax Law § 203-a, on December 24, 1991.
Underwood nonetheless continued to do business under the
Konglather name even after he was incarcerated and Konglather
was dissolved.

In 2010, Arrington and Charles Carter sent a letter of
direction to Rhino Entertainment Company,[5] purportedly on behalf
of "Konglather Records, a division of Konglather Music, Inc."
In that letter, Arrington and Charles Carter directed Rhino to
pay the Konglather Masters royalties due to Konglather under the
Atlantic Agreement to another company, Lastrada Entertainment.
Rhino complied, and between 2010 and 2017, Rhino paid to
Lastrada a total of $149,441.28 in royalties due to Konglather
under the Atlantic Agreement.  In 2018, Lastrada paid to
Underwood $26,152.23, the sum due to Underwood given his 35%
ownership stake in Konglather and the provisions of the 1982
Agreements entitling the musicians to half of the Master
Royalties and Konglather's shareholders to the remaining half of
the Master Royalties.  As relevant here, through the remaining
claim in this action Underwood seeks to recover for himself the

---

[5] Rhino and Atlantic are both divisions of Warner Music Group,
and Rhino administers certain rights -- including the rights to
the Konglather Masters -- on behalf of Atlantic.

balance of the $149,441.28,[6] premised on his assertion that
Arrington and Charles Carter relinquished their shares in
Konglather and he is its sole shareholder.

Underwood initiated this action in November 2016.  After a
series of amended complaints and extensive motion practice,
described in greater detail in the July 2020 Opinion, Underwood
alleged several claims against a variety of defendants arising
from alleged misappropriation of royalties from Underwood's
ownership of rights to the Konglather Masters and related
composition rights.  The defendants moved to dismiss, and the
July 2020 Opinion dismissed all of Underwood's claims except for
the claims against Lastrada, Charles Carter, and Sam Carter for
conversion of the $149,441.28 in royalties from the Konglather
Masters.  The parties cross-moved for summary judgment on that

---

[6] This sum encompasses both the half of the Master Royalties due
to the musicians under the 1982 Agreements and the half of the
Master Royalties due to Konglather's shareholders under the 1982
Agreements.  Underwood claims that, as a result of a 2003
settlement agreement in related litigation, Konglather acquired
the musicians' rights to the Master Royalties and is therefore
entitled to the full balance of $149,441.28.  The defendants
dispute Underwood's claims regarding the import of the 2003
settlement agreement and claim that the provision of the 1982
Agreements entitling the musicians to half of the Master
Royalties remains in effect.  The defendants are correct.  Among
other reasons, the 2003 settlement agreement addresses only a
dispute related to the ownership of composition rights in
certain compositions and does not address the ownership rights
to the Master Royalties.  See Underwood, 2020 WL 3640532, at *2.

claim on March 5, 2021.  The cross motions for summary judgment
became fully submitted on April 9.

## Discussion

Summary judgment may be granted only when parties'
submissions "show[ ] that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter
of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is genuine
if the evidence is such that a reasonable jury could return a
verdict for the nonmoving party.  A fact is material if it might
affect the outcome of the suit under the governing law."  Choi
v. Tower Rsch. Cap. LLC, 2 F.4th 10, 16 (2d Cir. 2021) (citation
omitted).  "Where the undisputed facts reveal that there is an
absence of sufficient proof as to one essential element of a
claim, any factual disputes with respect to other elements of
the claim become immaterial and cannot defeat a motion for
summary judgment."  Weiss v. Nat'l Westminster Bank, PLC., 993
F.3d 144, 162 (2d Cir. 2021).  "In evaluating a motion for
summary judgment, [a court] resolve[s] all ambiguities and
draw[s] all permissible factual inferences in favor of the party
against whom summary judgment is sought."  Choi, 2 F.4th at 16.
When presented with cross-motions for summary judgment, a court
must, with respect to each motion, "constru[e] the evidence in
the light most favorable to the non-moving party."  Wandering

7

Dago, Inc. v. Destito, 879 F.3d 20, 30 (2d Cir. 2018) (citation omitted).

"A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory." S. Katzman Produce Inc. v. Yadid, 999 F.3d 867, 877 (2d Cir. 2021). Instead, the "response . . . must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted). "Conclusory allegations, conjecture, and speculation as well as the existence of a mere scintilla of evidence in support of the nonmoving party's position, are insufficient to create a genuinely disputed fact." Hayes v. Dahlke, 976 F.3d 259, 267-68 (2d Cir. 2020) (citation omitted).

The sole remaining claim in this action is a claim for conversion of the balance of the $149,441.28 in royalties due from the Konglather Masters. Under New York law, "conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." Underwood, 2020 WL 3640532, at *5 (quoting Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50 (2006)). In order to prevail on a claim of conversion, a

plaintiff must demonstrate that it had a "possessory right or interest in the property" and that the defendant exercised "dominion over the property or interference with it, in derogation of plaintiff's rights."  Id.

Where, as here, a plaintiff brings a claim for conversion of money, the plaintiff may only prevail if the claim involves "a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question."  Id. (citation omitted).  In other words, a claim for conversion of money fails if the plaintiff does not demonstrate "legal ownership or an immediate right of possession to specifically identifiable funds and that the defendant exercised an unauthorized dominion over such funds to the exclusion of the plaintiff's rights."  CSI Grp., LLP v. Harper, 61 N.Y.S.3d 592, 599 (2d Dep't 2017) (citation omitted).

Underwood's claim for conversion is based on the defendants' alleged conversion of royalties due to Konglather under the Atlantic Agreement.  Thus, Underwood's conversion claim is premised on the alleged conversion of royalties due to Konglather and not to Underwood.  Indeed, Underwood does not dispute that, assuming he is properly understood to own 35% of Konglather, the $26,152.23 received corresponds to what he was owed under the 1982 Agreements.

It is well established that incorporation "create[s] a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001).  As a result, "[w]hen the claim is that corporate property has been removed from the corporation, it is the corporation -- having an independent legal identity -- that must seek, on its own or derivatively, to redress its injury," and "[t]he shareholder in such a case . . . generally lacks standing."  Bingham v. Zolt, 66 F.3d 553, 561-62 (2d Cir. 1995).

That rule controls the outcome of this case.  Underwood asserts in his conversion claim that the defendants improperly assumed control of money properly belonging to Konglather. Since it is Konglather, not Underwood, that was allegedly harmed by the defendants' conduct, it is Konglather, not Underwood, that has standing to seek redress for this injury.  "A party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Kowalski v. Tesmer, 543 U.S. 125, 129 (2004) (citation omitted).  And since Underwood lacks standing to bring his sole remaining claim, the defendants are entitled to summary judgment.

Underwood asserts that he has standing to bring a claim for conversion of the Master Royalties because Konglather's assets passed to him upon Konglather's dissolution.  Konglather was incorporated in New York and dissolved under New York law pursuant to N.Y. Tax Law § 203-a.  New York law provides that, upon dissolution of a corporation under that provision, corporate assets "remain in the corporation until transferred by it in its corporate name" pending either reinstatement or winding-up.  N.Y. Bus. Corp. Law § 1006(a)(1).

Underwood does not assert that Konglather affirmatively transferred its rights to the Master Royalties to him after Konglather was involuntarily dissolved.  Instead, he claims that Konglather's assets, including its rights to the Master Royalties, automatically passed to him because he was Konglather's sole shareholder upon its dissolution.  But the relevant New York statute expressly provides that the assets of a dissolved corporation remain in the corporation and do not pass to its shareholders, and New York courts have repeatedly rejected contentions that a dissolved corporation's assets automatically pass to its shareholders upon dissolution.  See, e.g., Matter of Hicks, 899 N.Y.S.2d 371, 373 (2d Dep't. 2010) ("Title to [the corporation's] property did not pass to its shareholders upon dissolution; rather, it remained in the

corporation's name."); Hon Fui Hui v. E. Broadway Mall, Inc., 773 N.Y.S.2d 344, 345 (1st Dep't. 2004) (holding that a shareholder-plaintiff "has no right to bring an action in his own name and on his own behalf on a cause of action that belongs to the corporation" even where the shareholder-plaintiff is "the corporation's only shareholder" and he "brought the action in the mistaken belief that . . . he had . . . succeeded to [the corporation's] assets"), rev'd on other grounds, 4 N.Y.3d 790 (2005).  Underwood's argument in support of his standing is therefore unavailing.

## Conclusion

Because Underwood lacks standing to pursue his sole remaining claim, the defendants' motion for summary judgment is granted.  The Clerk of Court is directed to enter judgment for the defendants and close this case.

Dated:    New York, New York
          September 8, 2021

                                    _____
                                         DENISE COTE
                              United States District Judge